## Charles E. Henry Sons Co. v. Edward Mahoney et al.

1. REPLEVIN—*Notice to the Vendor When the Property Sold is Replevied from the Vendee.*—Where property is taken by a writ of replevin from the vendee, by a third party, it is not necessary that a formal notice should be served upon the vendor demanding that he appear and defend the suit in order to fix his liability upon an implied warranty of title.

2. FORMER ADJUDICATION—*Identity of the Issue Determined.*—Ordinarily the pleadings in the former suit will show what was adjudicated in it, but a fact or question is no less at issue, or within the conclusive effect of the adjudication because the averments of the declaration and traverse are general.

3. SAME—*Parol Evidence Admissible to Show What Matters Were in*

*Fact Adjudicated.*—Parol evidence of what occurred upon a former trial and what matters were actually adjudicated, is always admissible in such a case.

4. Same—*Stenographic Notes and Instructions to the Jury Admissible for the Purpose of Establishing the Identity of Points Determined.*— Stenographic notes and the instructions given to the jury, are admissible for the purpose of establishing the identity of the point determined in the former action.

5. Same—*How Far Conclusive.*—When a court with jurisdiction of the parties and subject-matter of the litigation, makes an adjudication as to a question of law or fact, its adjudication is conclusive upon the same questions in any subsequent litigation between the same parties.

6. Vendor and Vendee—*When the Vendee is Evicted from the Property Purchased.*—Where a vendee of personal property is dispossessed of the same or of its value by legal proceedings at the suit of a third party, the burden of proof is upon him to show that such eviction was lawful before he can hold his vendor responsible for his loss.

Replevin.—Appeal from the Circuit Court of St. Clair County; the Hon. Martin W. Schaefer, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

Statement.—On the 17th of October, 1898, appellees, who are cattle dealers in St. Louis, Missouri, shipped ninety-eight head of cattle to appellants, who are commission merchants at the National Stock Yards, East St. Louis, to be sold for account of appellees. Means & Kneedler, who also seem to be cattle dealers, purchased the entire lot of cattle from appellants and paid the purchase price to them, and appellants remitted the proceeds of the sale, $1,865.90, to appellees at once.

Means & Kneedler sold fifty-two head of the cattle for about $1,100 to Berry & Sons, who in turn sold them to one White, all of Missouri.

On the 19th of October, 1898, Evans-Snider-Buel Commission Company, of Kansas City, Missouri, replevied the fifty-two head of cattle from White, in the Circuit Court of Montgomery County, Missouri, and on the same day the commission company replevied thirty-six of the ninety-eight head of cattle from Means & Kneedler, in the Circuit Court of St. Clair County, in this State, and on the same date the commission company replevied three of the ninety-eight

head of cattle from appellants. The latter suit was brought before a justice of the peace of St. Clair county.

The three replevin suits seem to have been based on a chattel mortgage, executed in Shannon county, Missouri, by one Freeman, in favor of said commission company, in November, 1897, to secure a debt of something more than $4,000.

As soon as the thirty-six head of cattle were replevied from Means & Kneedler, they demanded of appellants a return of the money which had been paid for the cattle and threatened suit unless it was done. Appellants at once notified appellees of the replevin suits and arranged for an interview with the parties in interest. This interview was held at Union station, in St. Louis, Missouri, on the evening of October 20, 1898, and there were present C. E. Henry, representing appellants, and Mr. Demcy, his lawyer, E. W. Mahoney, representing appellees, one McNeely and one Mitchell; the two last named persons were also cattle dealers, who sold these cattle to Mahoney Brothers.

In the meantime, between the shipment of the cattle and this interview, appellees had shipped other cattle to appellants to be sold on account of appellees, and after the interview the shipments continued in the same way. Appellants rendered accounts of sales as fast as made, but retained the proceeds in their possession.

At this interview the evidence leaves the exact conclusions arrived at between the parties in much doubt, as there seems to be much dispute on material matters. A careful examination of the testimony shows that the conclusions of fact that the learned trial judge arrived at, in the general judgment rendered in the case, are fully borne out by the evidence.

On the part of appellants the evidence tends to show that appellees were told that Means & Kneedler wanted their money and threatened suit if not paid; that Mahoney replied: "Why don't you return the money to them?" and that appellants replied that they did not want to be without the use of the money so long as they had already

paid appellees for the cattle; that thereupon Mahoney
replied that appellants already had some money in their
possession belonging to appellees, and that as appellees
would continue to ship cattle to appellants, there would
soon be enough to cover the amount of Means & Kneed-
ler's claim.    It is further claimed by appellants that there
was an agreement between the parties that a trial of the
two replevin suits in Illinois should, so far as the parties
to this interview were concerned, settle the title to all of
the cattle, and that appellees should have charge of the
suits in Illinois and manage to keep down expenses, and
that, inasmuch as Mr. Mitchell knew the man from whom
his firm had bought the cattle, and was on this same even-
ing going down into Missouri, where the cattle originally
came from, the Mahoneys and Mitchell would, on their
part, furnish the evidence to defeat, if possible, the replevin
suits.

All of this evidence is denied by appellees and they prac-
tically say that at this interview there was nothing said
about replevin suits.

At any rate, on the next day, October 21st, appellants
repaid to Means & Kneedler the $1,865.90, and claim that
they notified appellees of what had been done; this is also
denied by appellees.    The two replevin suits were tried as
one in the Circuit Court of St. Clair County, the one before
the justice of the peace having been appealed to that court.
The trial took place on the 6th of February, 1899.    The
issues were found for Evans-Snider-Buel Commission Com-
pany.    In a day or two after the trial, appellants rendered
to appellees a statement of moneys on hand and of dis-
bursements made for account of appellees.    The charges in
this account were $1,865.90 returned to Means & Kneed-
ler; $40 for attorneys' fees paid in trying the replevin cases;
$16.57 for court costs in the justice of the peace suit; $53.47
for court costs in the Circuit Court case.    A check for
$369.98 was also enclosed to balance the account.

It will thus be seen that appellants attempted to account
for $2,345.92.

Charles E. Henry Sons Co. v. Mahoney.

Most of this money had been in the possession of appellants since in October of the previous year, and the evidence fails to show that appellees asked for it during the pendency of the replevin suits. The bookkeeper of appellees, when the settlement sheet and the check came in, objected, according to his testimony, very emphatically to the credits that appellants had taken and declared to them that his firm would not stand it; this matter is denied by appellants.

The suit in Montgomery county, Missouri, was dismissed by a stipulation between the commission company and White, the plaintiff in the suit paying the costs. The stipulation was filed in vacation of the court, and some time in November, 1898.

At the trial of the case before the justice of the peace for the replevin of the three cattle, one of the appellees was present; he was not, however, present at the trial of the case on appeal in the Circuit Court of St. Clair County, nor were either of appellants present at the trial of the replevin suit for the thirty-six cattle against Means & Kneedler; but the deposition of one of the appellees was taken in St. Louis, and it was used on the trial of both cases.

The chattel mortgage which was used on the trial of the title to the thirty-six cattle and the three cattle, described the property therein as follows: "Two hundred head of one and two year old Southwest Missouri and Arkansas steer cattle, various colors, all dehorned and branded ' F ' on the left jaw," etc.; in conclusion the mortgage has the following provision: "The cattle above described may have other brands or marks on them than those mentioned above; but those given are the holding brands or marks, and carry the title to the cattle." This mortgage was used on the trial of the two Illinois replevin suits, and also on the present trial of this case.

At the trial of this case, Mr. C. H. Toups, brand inspector for the Cattle Raisers' Association of Texas, at the National Stock Yards, East St. Louis, testified that he saw all of the cattle which were replevied; that he went to Missouri and

saw the fifty-two head of cattle which were replevied there, and that he found no letter " F " on the left jaw; but that they were branded with an " F " on the left shoulder; that he had clipped off the hair on the jaws of these cattle to see whether the brands at such place had been obliterated, and that he had found no marks whatever on the left jaw of any of these cattle except one, and that mark he would not call a brand. All this evidence went into the record over the objection of appellants, they contending that all such matters had been adjudicated in the replevin suits. It is also shown that Mr. Toups made this examination on the 29th of October, 1898, at the direction of Means & Kneedler, and that he was not a witness on the trial of the replevin cases. All of the evidence as to the brands on the cattle stands unchallenged in the record. Appellants also introduced the pleadings, deposition of one of the Mahoneys, and the judgments in the replevin suits, to all of which matters appellees objected, on the ground that they were not bound by the same; no objection was made because such evidence was improper under the pleadings as they stood; the court overruled the objection of appellees and they excepted. The court, in admitting the deposition of Mr. Mahoney, stated that it was proper on the question of notice merely as to appellees' knowledge of the pendency of the replevin suit in which it was taken.

At the present trial of this case Mr. Means testified that appellants had nothing to do with the trial of the suit brought against him; that he had " sense enough to hire his own lawyers," and that he never intended to appeal from the judgment in that suit.

It is conceded all around that the successive purchases of the cattle was in good faith by each and all concerned; and it is also proven, beyond question, that all the items that appellants take credit for, as above stated, were really paid by them. There was a suit in St. Louis, brought by McNeely & Mitchell against Mahoney Brothers, in which they recovered judgment for these cattle, but beyond furnishing occasion for the taking of certain depositions, which were used

as impeaching testimony on this trial, the suit is not claimed to have any bearing on the issues in this case. The case was submitted to the court without a jury, and a judgment for the sum of $1,100 was awarded against appellants; appellees have assigned cross-errors, claiming that the court erred in not rendering judgment for the full amount of their claim, which they fix at the sum of $1,809.81, there being a discrepancy of $166.13 between the accounts of appellants and appellees, appellants charging themselves with that amount more than appellees charge them; at least the abstract so shows; but inasmuch as neither side has adverted to the fact, it is excluded from the consideration of the case.

MESSICK, MOYERS & CROW, attorneys for appellants.

WISE & McNULTY, attorneys for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Plaintiff's declaration consists of a special count and the common counts. The special count is based on the balance of account which grows out of so many cattle as appellants may have had on hand unsold prior to the time they sent their draft for the $1,865.90, and such cattle as were sent after that time and sold by appellants, but unaccounted for by not paying over the cash proceeds, less the check for $369.98 sent by appellants to appellees, on the 10th of February, 1899, to balance accounts, appellees refusing to recognize the items paid out by appellants, as shown by the statement of facts heretofore made. To the declaration appellants pleaded general issue, payment and set-off.

It is insisted by appellants that their assignments of error are well taken, and that the evidence shows that nothing is due appellees; while appellees claim that their cross-errors ought to be sustained and that a judgment for the full amount of their claim, $1,809.81, ought to have been rendered.

The pleas in the replevin cases were: *non cepit, non detinet*, plea of property in Henry Sons Company, denying the right of property in plaintiffs in the replevin cases, and plea of

property in Means & Kneedler; denying the right of property of the plaintiffs in the same actions.

To these special pleas there were traverses of the rights of property of Henry Sons Company and of Means & Kneedler. On all of the issues the court found generally for the plaintiffs in the replevin suit. The judgment determined that both the right of possession and the right of property to the thirty-nine cattle were in the plaintiff, and there is no contention to the contrary in the arguments on either side; the questions raised are: On whom are the replevin judgments binding? Are the judgments void for fraud and collusion? and what is the effect of the judgments as to the thirty-nine cattle on the fifty-two cattle replevied in Missouri.

Before attempting to answer these questions, it will be expedient to consider the chattel mortgage and the evidence of the brand inspector. We shall endeavor to show hereafter that this record does not establish, as to the fifty-two cattle, that the chattel mortgage was the controlling question in giving the judgments in the Illinois replevin cases. So that, in disposing of this branch of the case, we shall assume that the chattel mortgage and the evidence of the brand inspector were rightfully admitted. It needs no argument to show that cattle branded with an " ' F ' on the left shoulder," would not answer the description of cattle branded " ' F ' on the left jaw," particularly when the mortgage provided that, although there might be other marks or brands on the cattle, the brand " ' F ' on the left jaw " should carry the title to the cattle. The case of New Hampshire Cattle Company v. Bilby, 37 Mo. App. 45, admitted in evidence on the trial, seems to be in point; it is not necessary to say that we are concluded by its reasoning because we think that such ought to be the law, as a matter of abstract opinion. If the question were an open one on this record, we should say without hesitation that the chattel mortgage was invalid as to all of the cattle involved in this controversy.

On whom are the judgments binding in the Illinois

replevin cases? One action was entitled Snider-Evans-Buel Company v. Henry Sons Company; the other action was entitled the same plaintiff v. Means & Kneedler. The court held, as a matter of law, that the final judgments in the replevin cases were conclusive and binding on appellees, so far as the title to the thirty-nine cattle were concerned, if appellees had notice of the pendency of these suits and of the time when they were set for trial; and if, further, one of the plaintiffs was present at the trial in the justice court and was a witness in the other case. It is true that this proposition of law, as held, has been modified by the court, and it is also true that the proposition should have adverted to a supposed obligation in law or in fact for indemnity between the parties, because if no such obligation existed, even an express and clear notice to defend the replevin suits would have cast no obligation on the appellees; but there is abundance of evidence in the record to support such hypothesis. And inasmuch as the court found generally for appellees to the extent of $1,100 only, we can only conjecture upon what precise point the indemnity matter appeared to the mind of the trial judge; but if we can see from the record that the judgment is right, irrespective of the absolute correctness of the proposition held, the judgment ought not to be reversed. North Chicago City Ry. Co. v. Lake View, 105 Ill. 207. It is not necessary that formal notice should have been given to appellees by appellants demanding that they defend the replevin suits, if, as a matter of law or contract, appellees were obliged to indemnify Henry Sons Company for any loss that the latter might suffer in the cattle transaction. Drennan v. Bunn, 124 Ill. 175; Cressey v. Kimmel, 78 Ill. App. 27; 2 Van Fleet's Former Adjudication, Sec. 576. It is certain that one of the firm attended the trial in the justice court and that another of the firm had his deposition taken as a witness, and the evidence also shows that the matter of defending these replevin suits was talked of at the union station in St. Louis; if these suits were not mentioned at that interview, why was the interview held at all?

Were appellees indemnitors to appellants so far as these cattle, or a portion of them, were concerned? Appellees insist that appellants were mere agents of Mahoney Brothers in the sale of these cattle, and that the evidence shows that Means & Kneedler knew that fact; that therefore the recourse of the latter firm was entirely on appellees, because there was no contractual relation between Means & Kneedler and appellants; that the law is that appellants can not dispute the title to the proceeds of these cattle, because the money in appellants' hands was paid to the use of appellees, and so there never was any responsibility over from appellees to appellants, even if the title to these cattle should fail. All of this may be true, and yet appellants might, irrespective of their agency, have been liable in trover to the true owner of these cattle; and this fact may have furnished appellants a reason for indemnity, if they should be able to get it by way of contract before they had, in fact, paid a possible trover judgment.

There is evidence in the record that appellants were successful in getting this indemnity, for the refusal of the trial judge to find a judgment for any cattle other than those replevied in Missouri, shows that he concluded that appellants should be indemnified as to the cattle replevied in Illinois. As heretofore stated, we can only conjecture what precise facts the court found from the evidence. The record shows that appellees permitted, from October 20, 1898, to February 10, 1899, more than enough money to remain in the hands of appellants to cover any possible claims that Means & Kneedler might have against appellants on account of this cattle transaction. This was done between the interview at the union station and the trial of the replevin cases in the Circuit Court of St. Clair County. This undisputed fact, together with the evidence of what transpired at the interview, probably established in the mind of the trial judge that there was a contract of indemnity to the extent of money that was permitted to remain with appellants until the replevin cases were adjudicated in the Circuit Court of St. Clair

Charles E. Henry Sons Co. v. Mahoney.

County. Upon no other probable theory was this money left for such a length of time in the hands of appellants, when otherwise it was at once due and payable to appellees, and at a time when they were receiving other remittances from appellants. But the learned trial judge must also have found that appellees gave no authority to appellants to pay the $1,865.90 to Means & Kneedler; and there was abundant ground for that finding, for it is in evidence that Mr. Henry said that he was sorry he had done so. The authority was simply to retain the money as indemnity. Had appellees seen fit, in the first instance, it may be that they could have compelled appellants to have paid this money; but they dealt differently with the money matter, by putting up the special money indemnity to appellants, by letting so much money remain with appellants as probably covered what Means & Kneedler would have a right to have returned if the title to all, or any part of the cattle, failed.

It follows from what has been determined, that both appellees and appellants became privies to the judgments rendered by the Circuit Court of St. Clair County in the two replevin suits, and that they are bound by those judgments. If appellees had reasons to distrust the character of the defenses that might be made to those suits, they had not only the right, but it was their duty to have made their own defense. No criticism should be indulged because the same court has found apparently in opposite ways on the same chattel mortgage. Besides, it is not certain that appellees could have made a better defense. That might have depended on too many contingencies for conjecture. At any rate, the judgments in the replevin cases establish conclusively between the parties to this record, that as to thirty-nine cattle, appellants were evicted by paramount title, and that appellees must indemnify appellants, a thing they have already done by the amount of money in these cattle now in the hands of appellants and for which the court did not render judgment. This disposes of appellees' cross-errors.

But it is said by appellees that there was collusion between the commission company and Means & Kneedler in obtaining the judgments in the replevin cases, because the latter had evidence in their possession to defeat the chattel mortgage, when the brand inspector returned from Missouri, and when he could have testified that not a single head of the cattle was included in the description given in the mortgage. The question whether the judgments are fraudulent so as not to bind the parties to this record, can not be raised in that way. To make that attempt is to collaterally attack the validity of those judgments, which may not be done; these judgments, rendered by a court of competent jurisdiction, must be set aside in some direct proceeding, or not at all.

It remains to point out that the judgment against appellants is correct. So far as the dismissal of the replevin suit in Missouri is concerned, it is not pretended that appellees either authorized or ratified the act. The status given to the fifty-two head of cattle in Missouri by the agreement or non-agreement of the commission company and Mr. White does not in any wise bind appellees. Even had they been parties directly to the record of the Missouri suit they could not have prosecuted it to a final judgment. The plaintiff in that suit, so far as we are advised, had a complete right to try or dismiss it, taking the chances of liability on the replevin bond. But it is insisted that appellees are still bound by the judgments in the replevin cases as to the title to these fifty-two cattle. They are certainly not bound by the judgments directly; and if they are bound at all it is by reason of some controlling fact which was settled adversely to appellees in the Illinois replevin cases. It is urged that the chattel mortgage is that controlling fact, and therefore it was error to admit it and the testimony of the brand inspector, in evidence.

The declaration in the replevin suits did not count on the chattel mortgage in terms for the rights of possession and of ownership of the plaintiffs in those suits. It is said by the court in Wright v. Griffey, 147 Ill. 500:

Charles E. Henry Sons Co. v. Mahoney.

" Ordinarily the pleadings in the former suit when introduced will show what was within the issue tried and determined therein. A fact or question is no less at issue, or within the conclusive effect of the verdict and judgment, because the averments of the declaration and traverse are general. The difference between cases where the issue is thus general and those where it is limited by the pleading to a single point, is, that the matter which appears by the mere inspection of the record in the latter, must in the former be established by evidence. Parol evidence of what occurred upon the former trial and what was actually decided, is always admissible in such cases."

And the entire stenographic notes and the instructions given to the jury were introduced to establish the precise point determined adversely in another action, which was asserted by the parties to be binding in the case decided by the court. So the court was able to see what the issues were that had been submitted on the former trial. In the case at bar, the issues as to possession and right of property were general; the pleading was not limited to the fact that a chattel mortgage was the precise foundation of the issues litigated. The fifty-two cattle themselves were not a subject-matter directly in issue in the two Illinois replevin cases. As to the thirty-nine cattle the judgments settle conclusively as against the parties to this record on a collateral attack, that others than the parties here owned the cattle, and that there was an eviction, as we have said, by paramount title. The fifty-two cattle are other than the thirty-nine cattle. If any fact, then, which established the ownership of the thirty-nine cattle, was " the ultimate vital point, or only incidental, but still necessary to the decision on that point," was litigated in the Illinois replevin cases, and if such fact is the same and controlling fact as to the ownership of the fifty-two cattle, it devolved upon appellants by pleading and evidence to show it. Attorney-General v. Chicago & Evanston R. R. Co., 112 Ill. 520. We pass the point that appellants filed no plea of *res adjudicata*, and look to the evidence to see whether it discloses that there was an identity of issue as to the ownership of the thirty-nine cattle and the fifty-two cattle. The evidence fails to disclose such a case.

It is true that the chattel mortgage was introduced in evidence in the two replevin cases, and that it was also introduced in the case at bar; it is true that the brand inspector says on this trial that he had examined all the cattle replevied and that none of them had the brand " ' F ' on the left jaw," and he was not a witness in the two replevin suits. In addition thereto, we will say that as against the evidence of the brand inspector we must conclusively presume in favor of the judgments in the two replevin cases; there was evidence to show that the brands of the thirty-nine cattle replevied tallied with the description of the chattel mortgage. As to the fifty-two cattle this only holds true, if plaintiffs in those suits had a finding in their favor on the chattel mortgage only. If the record before us had established the fact that this was the only evidence on which the court found the rights of possession and of property in the two replevin cases, the question of the chattel mortgage would be *res adjudicata;* for, if the defendants or their privies had offered counter evidence on the description of the cattle, and had, nevertheless, been cast in their defense by the court's finding, then their remedy was by appeal to have corrected that error, and if they had omitted to have shown that the description did not tally with the mortgage, such fact would have been an omitted defense and they still would have been bound, because such facts would have been the only material issue made by the evidence on the ownership of the cattle. But the record before us fails to establish that the chattel mortgage was either " the ultimate vital issue or only incidental, but still necessary to the decision of that point."

For anything that appears in this record the chattel mortgage was admitted in evidence merely as inducement to full proof that the plaintiffs in the replevin cases, after the execution of the mortgage, and the sale of the cattle to the parties to this record, bought the cattle outright from the mortgagor, and so it would have been immaterial whether the plaintiffs in the two replevin cases had a chattel mortgage or not, as a foundation for their rights of

Charles E. Henry Sons Co. v. Mahoney.

property. Before the judgments could be plead or proven as estoppels, so as to conclude as to matters other than the title to the thirty-nine cattle, it was necessary for appellants to have shown that appellees were defeated on the same material facts in the two replevin cases that they are now seeking not to be concluded by in this suit. See cases cited in Wright v. Griffey, 147 Ill. 498. The circumstance that the cattle were replevied in Missouri is of no importance on this question; the question is, is the title to the fifty-two cattle also conclusively settled by the prior replevin cases as against appellees and in favor of appellants, so as to show an eviction by paramount title, as a matter of estoppel from former litigation ?

This court is unable to answer that question in the affirmative from anything that appears in this record.

Appellants must show in some other way that they were evicted by a title paramount as to these cattle, because if they were not so evicted, the cattle or their value may still be somewhere (the proper conditions existing) to respond to their rights of ownership. And the burden of proof is on appellants to show that this eviction was a lawful one. Matheny v. Mason, 73 Mo. 677. If appellants voluntarily yielded to third persons the money placed with them as their indemnity, they assumed all the risks of proving the correctness of their action, so long as the court must have found—and in which finding we concur—that the payment of the money by appellants to Means & Kneedler was neither authorized nor ratified. Accordingly appellants have no right to pay any part of the indemnity which was in their hands relating to the fifty-two cattle in Missouri.

If White and his predecessors in title to these cattle have been repaid their money, it would seem as if the cattle were now the property of appellants, though on that proposition we express no opinion.

The evidence shows that these cattle were worth about $1,100, and inasmuch as no question has been raised either in the court below or in this court as to the measure of damages, it follows that the judgment of the Circuit Court is correct.

Appellees contend with some insistence, that there could be no action for the breach of the warranty had appellants brought a suit for indemnity, unless the proof showed that White had called on Berry & Sons, and they had called on Means & Kneedler, and they in turn had called on Mahoney Brothers to defend the title; and, further, that an intermediate covenantee can not sue his covenantor without first satisfying his liability to his covenantee; citing Chambers v. Smith, 23 Mo. 174, and Vancourt v. Moore, 26 Mo. 98. Without controverting that position or the cases cited in support thereof, the reply to it is. that if the parties had remained in their strictly legal positions from the beginning, such rules of law might have been applicable; but an indemnity fund was permitted to remain in appellants' hands to cover the matters in contingency, so that the real question in this case is, what amount of the indemnity fund have appellants a right to retain and what amount must they account to appellees for ?

No argument has been made as to other items claimed by appellees to have been wrongfully paid out by appellants for court costs and attorneys' fees, therefore we regard the complaints to such matters to have been waived.

The judgment of the Circuit Court of St. Clair County is affirmed.