## VANCOURT et al., Respondents, v. MOORE, Appellant.

1. A. conveyed certain premises to B. with warranty; B. conveyed the same to C.; C. agreed to convey the same to D.; D. entered into possession and continued in possession thereof until evicted by persons claiming under paramount title; after this eviction D. obtained a decree of specific performance in a suit that he had instituted against C. previous to the eviction; this decree vested in D. all the right, title and interest that C. had in the premises at the date of the sale to D. *Held*, inasmuch as there was no interest or estate in C. upon which the decree could take effect, that it did not operate an assignment to D. of the covenant of warranty so as to enable D. to maintain a suit thereon against A. (Per SCOTT, Judge.)

2. Previous to the decree of specific performance in the suit of D. against C., C. obtained a judgment against A. in a suit on the covenant of warranty, which judgment was paid by A., C. indemnifying him against any liability to any other person on account of his covenants in his deed; *held*—it appearing that at the time of the eviction of D. he had not paid to C. the purchase money agreed to be paid, and consequently had not a complete equitable title as against C.—that the judgment in favor of C. against A. was a bar to a suit by D. against A. on the covenant of warranty; that the decree would not, in such case, relate back to a point of time anterior to the eviction, al-

though, if there had been no recovery by C. against A., the decree would so relate and would operate as an assignment of the covenant of warranty. (Per RICHARDSON, Judge.)

3. A. having notice of the equitable rights of D. and taking also a bond of indemnity from C., the decree would relate back to the time of the sale by C. to D. (Per NAPTON, Judge.)

*Appeal from St. Louis Land Court.*

In the year 1843, George M. Moore made a deed of conveyance, with covenants of indefeasible seizin and of warranty, of certain real estate to one Ashford. In 1845 Ashford conveyed with like covenants to one Warren. In 1848 a proceeding was commenced in the St. Louis Circuit Court by A. and B. J. Vancourt to obtain a decree for the specific performance of an agreement made by said Warren to convey said real estate to said Vancourts. This proceeding resulted in a decree of said circuit court, at its April term, 1853, by which it was " ordered, adjudged and decreed by the court, that all the right, title, claim, interest and estate which said defendant had in and on the 24th day of September, 1847, to the said sixteen lots of ground or parcels of land above described shall be and the same is hereby divested out of the said defendant and vested in the said complainants, Alexander Vancourt and Benjamin J. Vancourt, and their heirs forever, as fully and effectually as the same might or could have been conveyed to the said complainants by a quit claim deed therefor executed by said defendant to said complainants on the said 24th of September, 1847 ; and that said complainants pay to the said defendant the sum of $300, residue of the sum of $1900 agreed to be paid as the purchase money of said real estate by said complainants, and, until the said sum of $300 be paid by the said complainant, that the same be a charge and encumbrance," &c.

The present action was an action instituted by A. and B. J. Vancourt against George M. Moore. Plaintiffs set forth the facts above stated and alleged that they took possession of the land in September, 1847, and remained in possession

of it under the contract of sale until the year 1850, when the heirs of Amos Stoddard, claiming the land by title paramount, evicted them therefrom; that the title which the said Moore conveyed to Ashford failed entirely, and that the covenants in Moore's deed were broken.

The defendant in his answer denied the possession of the plaintiffs, denied the validity of the decree of the circuit court, denied the eviction of the plaintiffs, and alleged that Warren had already recovered judgment against him on the covenants sued on in this suit, and that he had paid the judgment.

At the trial plaintiffs introduced in evidence the record of the suit of Vancourt et al. v. Warren; also evidence showing and tending to show that they were in possession of the land in controversy in 1847, and so continued until the heirs and representatives of Amos Stoddard recovered and took possession thereof in 1850–1. Moore claimed title under a New Madrid location. See case of Mills v. Stoddard, 8 How. 345, the report of which was introduced in evidence.

The defendant offered in evidence the record of the recovery of a judgment in favor of Warren against Moore on the covenants sued on in this action, and offered to prove the payment of this judgment by the defendant. The court excluded this evidence.

Plaintiff also introduced evidence showing that after Warren obtained a judgment against Moore, he gave Moore a bond with security indemnifying him against any liability on his covenants to any other person.

Other testimony was introduced; it is deemed unnecessary to set it forth.

The court, at the instance of plaintiffs, gave the following instructions: " 1. In this cause it is admitted that the defendant made a covenant of warranty stated in the petition; and the record in evidence shows that the plaintiffs are the assignees of that covenant, deriving title thereto from L. L. Warren, to whom it is admitted that Ashford conveyed the lands described in the petition. If the jury believe from the

evidence that the plaintiffs were in possession of the premises from 1847 until some time in 1851, when upon claim made thereto by persons having paramount title they abandoned the same, the plaintiffs are entitled to recover the amount of the consideration money paid to Moore by Ashford with interest to this time.   2. If the plaintiffs took possession, under their contract of sale with Warren, on September 24th, 1847, of the lots described in the petition, and so continued in possession until the judgment of the Supreme Court in 1850, declaring the title of the heirs of Amos Stoddard to be paramount to that of the New Madrid location as to land within United States survey 3026, and then upon that judgment being promulgated abandoned the possession, giving way to the claim of the agent of the heirs of Amos Stoddard, then the plaintiffs are entitled to recover against the defendant for a breach of the covenant of warranty declared on in this action."

The jury found a verdict for plaintiffs.

*Todd, Krum & Harding*, for appellant.

I. The decree in the suit of Vancourt et al. v. Warren is not conclusive as against Moore.   He may attack it collaterally.

II. If the decree be conclusive it does not carry the covenant of warranty.   This covenant is only accessory to the possession, and no possession was shown in either Moore or Warren prior to the contract of plaintiffs with Ashford.   (1 Metc. 450 ; 23 Mo. 151, 174.)   Where no actual possession is shown, it is presumed to be with those having the title ; and this the plaintiffs assert was in the representatives of Stoddard.   The taking of possession by the plaintiffs was their own independent and voluntary act, wrongful as against the representatives of Stoddard and not authorized under and by virtue of their contract with Ashford.   (6 Barb. S. C. 116.) A contract of purchase gives no right of entry unless expressly agreed.

III. The court erred in allowing the plaintiffs interest from the date of defendant's deed to Ashford.

IV. There was error in allowing damages to the full amount of the consideration. There was a recovery of, and eviction from, only an undivided portion of the property.

V. The court erred in allowing the plaintiffs to recover the full amount of the consideration. Their right or title to any recovery was encumbered, in favor of Warren, by the decree, for three hundred dollars.

*Gantt*, for respondents.

I. The two instructions given to the jury at the instance of plaintiffs contain a correct exposition of the law. (Lawless v. Collier, 19 Mo. 480 ; Gantt & Dickson v. Desire's Adm'r, 23 Mo. 157.)

II. The instructions, asked by defendant, were properly refused.

SCOTT, Judge. The fourth section of the act concerning conveyances empowers any person claiming title to any real estate, notwithstanding there may be an adverse possession thereof, to sell and convey his interest therein in the same manner and with the like effect as if he was in the actual possession. It is conceived that this provision does away with that rule of the common law which required a grantor of land to be seized thereof, when he makes his deed of conveyance, in order that his covenant of warranty may attach to and run with the land. This section was introduced to enable persons having claims to land without possession, or even in case of adverse possession, to alien such lands as though they were seized thereof.

But whilst the law thus enables individuals to dispose of their claims to real estate and thus to affect themselves by their conveyances, there is nothing which authorizes the courts or the officers of the law to sell or convey such claims. If there is no title nor any interest nor any possession in a judgment debtor, in cases without the influence of the regis-

try laws, there is no power in the officer to sell a mere claim under an execution. There being nothing on which the sale can operate it is ineffectual for any purpose, and it is as though it had not been made. If the covenant is of value to the debtor, there are more appropriate ways of subjecting it to the claims of creditors than this, which must al-always result in a sacrifice, as few would be willing to buy a mere law suit. So there being no title nor estate nor interest in Warren at the date of the decree vesting title in the plaintiffs, that decree was wholly ineffectual. It could not operate on a thing not in existence. While a court of equity may make a deed bear date from a day that is past where there is an existing interest, yet, when there is no right nor title in a party at the date of the decree, the court can not make an effectual order vesting an interest as of a former day, there being nothing on which such a decree can operate. In such cases the court should, where it is proper to do so, entertain the petition to give the parties relief for the non-performance of the contract by the defendant, or remit him to his action for damages for a violation of the agreement. In declaring the decree ineffectual it is not considered that it is at all impeaching or going behind it. While suffering the decree to stand, it is only showing that there is nothing on which it can operate ; just as in the case of the sheriff's deed it may be shown that there was no interest in the judgment debtor. In my opinion the judgment should be reversed.

Judge Richardson concurs in reversing the judgment.

RICHARDSON, Judge. I am in favor of reversing this judgment for the reason that the court improperly excluded the record of the proceedings and judgment in the suit of Warren v. Moore. In 1851, the Spanish title, which was confirmed July 4, 1836, was fully established by a judicial proceeding, and the Stoddards, who claimed under it, went into possession, so that those who held under the New Madrid location were evicted, and there was a substantial breach of Moore's covenant contained in his deed to Ashford. At that

time Moore was liable to some person for the full amount of the consideration named in his deed, and the question is, to whom was he liable and who was then in a condition to assert and maintain a right of action on the broken covenant? Ashford could not sue, for he had parted with all his interest in the land, and he could not *use* the covenants which ran with it without first satisfying the liability on his own covenants. (Rawle on Cov. 366.) Warren was the alienee of Ashford, and as such became the assignee of Moore's covenants and had the right of action against Moore, unless some other person had a better right; for Moore could only be made liable once for the same cause of action. If Moore suffered Warren to recover, when he could have defended the suit on the ground that Warren had no cause of action because he had assigned the covenant, that judgment would be no defence to this suit. Now it is certain that Warren had a right of action, unless the plaintiffs had; and they had not, because they had neither the legal title nor such an equity as entitled them at that time to be clothed with it. If, in 1851, Warren had merely the bare legal title, and the plaintiffs had a perfect equitable title, by which I mean that they had performed every condition to be performed on their part according to the terms of their contract of purchase and were only waiting for the formal execution of a deed to be invested with the legal title, they could have maintained the action against Moore, and for that reason Warren could not; but in 1851 they had not, if they yet have, paid to Warren all the purchase money, and it does not appear from their bill or in any other way that they had tendered that which remained due; and unless it then appeared that they had done all that was required of them, it could not be assumed that they ever would. Not having the legal nor such an equity as entitled them to it, they could not have sued Moore as assignees of the covenant; and, if they could not, Warren could, and the judgment in his favor is a bar to another suit. The fact that Moore, in the abundance of caution, took a bond of indemnity from Warren on the payment of the judgment is immaterial,

for, whether the judgment is a bar or not can not depend on any such circumstance.

The payment of the purchase money and the passing of the title are simultaneous acts and should be done interchangeably. (Marg. of Anspack v. Noel, 1 Mad. Ch. 175.) And though the decree of 1853 is manifestly unjust in directing a specific performance without seeing to the payment of the purchase money, it is not void on its face; and in my opinion if it had been rendered before there was any recovery on the covenant, it would have related back to a point of time before the eviction, and have operated to invest the plaintiffs with all the rights incident to the assignment of a covenant before its breach. (3 Young & Coll. 505.) But the doctrine of relation is a fiction of law, and ought not to be allowed to work injustice; and as Moore has once responded to a suit on his covenant, brought by a proper party, he is not liable to another.

NAPTON, Judge. The first question discussed in this case is whether the plaintiffs became the assignees of Moore's covenant of warranty by his purchase from Warren, so as to entitle them to this action. As it did not appear that Moore had any possession, and it did appear that he had no title when he sold to Ashford, it is argued that the covenant of warranty did not run with the land, and such appears to be the settled doctrine in several of the states. But our statute declares that " any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein in the same manner and *with like effect* as if he was in the actual possession thereof." If the same effect is to be given to a conveyance here, where there is an adverse possession, as if the possession was in the grantor, it would appear to follow that the like effect must be given to conveyances where there is no possession at all either in the grantor or adversely to him.

The principal difficulty in this case is in determining the effect of the decree of the circuit court in 1853. By that

decree all the right, title and interest of Warren, which he had in September, 1847, (the date of his sale to the plaintiffs,) was divested out of Warren and vested in the plaintiffs " as fully and effectually as the same might or could have been conveyed to the said complainants by a quit claim deed therefor executed by said defendant to said complainants on the said 24th day of September, 1847." The decree was unconditional, absolute, without regard to the payment of the purchase money, and attempted to convey the title as a deed would in 1847.

The doctrine of relation is a fiction of law, and ought never to be allowed to work injustice. If the defendant Moore can be injured by antedating the deed from Warren to the plaintiffs, the decree should not be permitted to have a retroactive operation. Moore was sued by Warren on this same covenant in 1852 and a recovery had against him for the purchase money and interest. Previously to this suit Warren had sold to the plaintiffs, and if he had also executed a conveyance then Moore could have defeated the action by showing Warren's conveyance. It seems to be settled that where an intermediate covenantee has parted with all his interest in the land, he has no right to use the covenants which run with it, and it is only where he has been made liable upon his own covenants and satisfied that liability that he can maintain his action against the original covenantor. But Warren had not made a deed in 1852 when he sued Moore on his covenants; he had agreed to convey to the plaintiffs, and their title bond was on record. Moore then had constructive notice of the outstanding equity of the plaintiffs. The suit for a specific performance had also been instituted and this *lis pendens* was also a notice to Moore. His taking an indemnifying bond from Warren to secure himself against his supposed liability to the plaintiffs *implies* that he had *actual notice* of this equity. Moore might have required an interpleader to determine the proper party to whom he was liable; he virtually did so by taking the indemnifying bond given in evidence in this case. I am constrained there-

fore to regard this action as substantially one against War-
ren, and can therefore see no impropriety in letting the de-
cree have all the effect by relation which it seems to have
been intended to carry with it.

The manifest injustice of the decree for specific perform-
ance without seeing to the paying of the purchase money is
not a matter which can affect this case. That decree has not
been appealed from, nor any proceeding instituted by which
its validity can be questioned. Its merits are not a matter
of inquiry here.

At the date then of the decree, taking it to relate back to
1847, no breach of the covenant of warranty in the deed
from Moore to Ashford had occurred, and the plaintiffs were
the equitable owners of the covenant, and of this fact the
defendant had actual and constructive notice. What might
have been the rights of Moore under these circumstances if
he had taken no protection from Warren against any contin-
gent liability to the plaintiffs, it is not important to deter-
mine. He did take such steps in the action brought against
him by Warren as to arrest the transfer of the damages to
the plaintiff in that action until the controversy between him
and the plaintiffs could be adjusted, thereby recognizing the
equitable claim of the plaintiffs and the necessity of protect-
ing himself against its possible perfection into a legal title.

As the eviction proved in this case was a mere abandon-
ment of possession to the paramount title, and the title or
rather the recovery relied upon to show this eviction went
only to a part of the land, it was contended that the court
should have directed an apportionment of the damages. But
the record showed that the title under which plaintiffs held
was entirely swept away by the Spanish claim held by Stod-
dard's heirs, although the judgment in the particular case
referred to went only to a part of that title.

The measure of damages in a breach of a covenant of war-
ranty is the purchase money and interest. This is not dis-
puted, but it is suggested that the rents and profits should be
considered an equivalent for the interest until an eviction oc-

curred, and this principle is an equitable one where the land is of a character that will yield rents and profits. As the land sold in this case was admitted to be unimproved in any way, the rule will not apply, and the instruction of the court upon this subject was correct.