## J. H. KENYON et al. v. ETTA P. RUSSELL.

Eastern Section. January 29, 1927.

Petition for Certiorari denied by Supreme Court, May 7, 1927.

1. **Covenants.** Covenants of seisin, right to convey, and against encumbrances are personal and broken as soon as the deed is executed.
    In an action to recover for breach of covenants where the deed contained covenants of seisin, right to convey, and against encumbrances and the evidence showed that there were unpaid taxes at the time of the conveyance, held that the covenants were broken and complainant was entitled to recover.

2. **Courts.** Jurisdiction. Equity court may take jurisdiction of any case were complainant has no other relief.
    In an action to recover for the breach of covenants in a deed where the sum involved was less than $50 and it was insisted that an equity court could not take jurisdiction held that if the suit had been only for $50 the court could not take jurisdiction but since the bill also sought other relief for which complainant had no remedy at law, the equity court had jurisdiction.

3. **Covenants.** An intermediate vendor can not recover on covenants running with the land until he has been forced to discharge his liability to his vendee.

Where a deed contained a covenant of title and the vendee had conveyed to another party and the second vendee had made no complaint as to title at the time the complainant brought his bill against the original vendor, held that he was not entitled to recover on such a covenant until he had been forced to discharge his liability to his vendee because of an eviction by the holder of a paramount title.

4. **Covenants.** Reason for the rule that intermediate vendor can not maintain suit before he has been compelled to pay damages.

The reason of the rule seems to be to prevent the obvious injustice which would arise from making prior vendees liable to all subsequent owners in turn, and thus pay damages more than once for the same breach of covenant. The principle that the intermediate covenantee can never sue until he has satisfied the damages was adopted to prevent such an injustice.

5. **Injunction.** Complainant held entitled to injunction restraining the collection of collateral notes until proper credits were made.

In an action to restrain the collection of collateral notes on the ground that complainant had been compelled to pay certain taxes which should be credited on the notes, held the complainant was entitled to the injunction until the proper credits were made.

Appeal from Chancery Court, Roane County; Hon. J. H. Wallace, Chancellor.

Reversed and dismissed without prejudice.

J. W. Stone, of Harriman, for appellant.

Harris & Evans, of Harriman, for appellee.

SNODGRASS, J. J. H. and J. D. Kenyon, and for the use and benefit of J. H. Kenyon, filed this bill in the chancery court of Roane county, Tennessee against Mrs. Etta P. Russell and husband, J. G. Russell, nonresidents of the State of Tennessee, and D. O. Harris, attorney for the Russells, to enjoin them from selling, transferring or incumbering certain collateral notes that had been placed with said attorney to secure certain notes of complainants to defendants Russell; to attach said notes under the claim made in the bill and the allegation of nonresidence and insolvency of the defendants Russell. The bill sought to restrain the defendants from making any further efforts to enforce collection of the notes held by the said D. O. Harris and executed by said J. H. Kenyon to the said Etta P. Russell. It asked that complainants be given a judgment for the use and benefit of J. H. Kenyon against the defendants Etta P. Russell and J. G. Russell for the amount of damages sustained by complainants or either of them by reason of the failure of title and breach of warranty in the deed executed by said Russells to complainants on the 22nd day of November, 1918, and, if necessary, that they have a reference to the master to ascertain the amount of their damages by reason of said breach of

warranty, and that the same be set off against the notes executed by J. H. Kenyon to Etta P. Russell and now, it was alleged, in the hands of D. O. Harris, and that said notes be by the court ordered canceled and surrendered to said J. H. Kenyon; that complainants have a judgment against said defendants Russell for any excess of damages which they may have sustained by reason of the breach of said warranty in excess of the amount of the notes so held by D. O. Harris; and they prayed for general relief.

The bill averred that on the 22nd day of November, 1918 complainants purchased from defendants Etta P. Russell and husband J. G. Russell a tract of land in the Third district of Morgan county, Tennessee containing 237½ acres; that on said date the said defendants executed to complainants a general warranty deed to said land, which it was averred was fully described in said deed, said to be registered in the Register's office at Wartburg, Tennessee in Deed Book J, Vol. 3, page 229, and which deed was filed as Exhibit A to the bill. It was averred that in the purchase of said tract they paid $400 in cash and executed their five notes each in the sum of $360, payable one, two, three four and five years after date, with interest from date, providing that if any one of said notes was not paid at maturity, that then all of said notes should become due and payable. It was further averred that when the third of said notes became due they were not able to meet it promptly, and that the defendants Russell placed the said notes in the hands of D. O. Harris, attorney, of Harriman, Tennessee for collection; but that complainants negotiated a renewal of the matter after having paid on said notes the sum of approximately $800 on the principal, together with the interest on that portion of the principal paid. Complainants allege that in the meantime the said complainant J. D. Kenyon quit claimed to defendant J. H. Kenyon all the right, title and interest which he had in the property, or in the proceeds of the same, filing copy of the deed as Exhibit B. That J. H. Kenyon had negotiated a sale of said real estate to one L. L. Thomas, at the price of $3500; that $500 of this sum had been paid in cash or its equivalent, and $3,000 provided for in ten notes that were executed, all of which it was said bore date of April 3, 1922; that the first two of said notes were for the sum of $432.66 each, and matured the first one on November 22, 1922, and the second one on November 22, 1923; that the other eight notes were for $274.78 each and matured yearly thereafter consecutively until the full series of the notes became due. It was then averred that on the same date, April 3, 1922, the said J. H. Kenyon secured the renewal of the unpaid balance of the original notes to Russells, and that there was added into the same ten per cent or thereabouts as attorneys fees, amount-

ing to more than one hundred dollars, in addition to the principal and interest; that complainant J. H. Kenyon then executed his notes for said amounts, the first note maturing November 22, 1922 and being for approximately the sum of $930, giving the same from memory, and the second note for $432.66, maturing November 22, 1923; that these notes contained the provision that if the first note was not paid at maturity, then the other note should become due and payable at once. It was averred that at the time of this renewal the said Russells released the lien retained in the original deed of Nov. 22, 1918, and that complainants executed to L. L. Thomas a deed to said property, conveying the same to him in fee on the same date, to-wit, April 3, 1922; that the said L. L. Thomas executed a trust deed to D. O. Harris, trustee, with your complainant J. H. Kenyon as beneficiary, securing the said ten notes, which deed, it was averred, was placed of record. It was then averred that in order to secure complainant's notes to the defendants Russell, D. O. Harris acting as the agent of Russells, required the said J. H. Kenyon to put up as collateral the entire $3,000 of notes executed by L. L. Thomas and secured by said trust deed, and it was these notes complainants sought to restrain the defendants from selling. It was further alleged that while the defendants Russell executed to complainants a warranty deed, warranting the land to be free and unincumbered, and covenanting with complainants that they were lawfully seized and possessed of said lands, that some twelve months ago complainants discovered said Russells had failed to pay the taxes on the land for the year 1918, which it was averred was a lien upon the land at the time they executed the deed to complainants, and that by reason of their failure to pay said taxes the defendants Russell had breached the warranty of their deed; that in order to keep the land from being sold they were compelled to pay to the trustee of Morgan county on December 30, 1921 the sum of $43.31, as taxes and penalty for the year 1918, and it was averred that they had been given no credit for the same on their said notes, and that they had not in any way been reimbursed for said payment of taxes; that said defendants have breached the warranty of their deed and are liable for said amount to complainants, together with interest thereon from December 10, 1921.

It was then averred that complainants have recently discovered that defendants Russell were the owners in fee of only about thirty-seven and one-half acres of the tract of land conveyed by them to the complainants, and that of the other 200 acres they were the owners of only a three-eighths undivided interest, the other five-eighths undivided being held, it was averred, by the heirs of A. S. Lenoir or their vendees.

The bill set out the particulars in which it was alleged the title had failed, especially as to 100 acres of the boundary that lies inside of Morgan county Entry No. 3567, and with reference to 100 acres lying inside of Morgan county Entry No. 903, and it was charged that nearly all of the cleared land, buildings and improvements on the farm were located on the two entries as above mentioned, and that the greater portion of them as in all are in the bounds of Entry No. 3567; that since their purchase they had put improvements on the same to the value of at least five or six hundred dollars or more, and that they placed said improvements on it in good faith and before they discovered the defect in the title. It was asked that their damages be set off against the notes owing by said J. H. Kenyon, and that they have judgment over and against the defendants Russell for any excess they may have sustained by reason of the failure of title. Their damages were averred to be in excess of two thousand dollars, but they insisted that they were entitled to a reference to ascertain the amount. It was averred that the facts with reference to said title are shown by a decree of the Supreme Court of Tennessee on the 10th day of November, 1891 in the case of Lizzie M. Key et al. v. A. H. Snow, et al., a copy of which was filed as Exhibit C; that defendant Harris, as attorney for the Russells, had advertised the ten notes executed by L. L. Thomas to said J. H. Kenyon for sale at public outcry, to be had at Kingston, Tenn., December 26, 1922, and they prayed as indicated. Attachment and injunction were issued and served as prayed for.

The answers of the defendants were filed admitting the sale of the property to the Kenyons, the execution of the notes, the subsequent sale to Thomas and the execution of these notes and the trust deed to secure them, the cancellation of the lien reserved to the Russells and in lieu thereof the pledge of the ten notes. These answers denied all failure of title, admitted the purpose to sell the notes, which default, it was averred, in the payment of the notes they secured, had brought about. They denied that ten per cent attorney's fee had been added to the notes, or any other amounts except the face of the notes with interest. They denied the statement as to the taxes, and say that there was some taxes due at the time of the sale, but that complainants knew about the taxes and were to pay the same and furnish a receipt therefor that was to be credited on their notes, but that they had never to this day been furnished with a receipt or anything showing the amount, nor never had been told the amount until the filing of the bill; that these defendants have always been ready and willing at all times to credit the amount paid for taxes by complainants, and are still willing to do so, but deny the right of complainants to sue in this

court for same, insisting that the amount is beneath the dignity of the court. It was denied that they took the $3000 of notes with any wrong motive, but insisted that it was a alone for the purpose of making safe the collection of Kenyon's notes. They denied that it was planned for the purpose of depriving complainants of their collateral, or to hamper them in any way in selling or discounting the notes.

Defendants say that they bought the farm from Martin Snow, now deceased; that they were informed and believed he had a good and indefeasible title to the property sold to complainants. They denied that the heirs of A. S. Lenoir or anyone else had a right or title to the property. They say that their ancestor, Snow, had held the property in actual, open, notorious and exclusive possession under color of title for more than seven years, and more than twenty years, and that all other claimants are barred by the statute of limitations, which was pled; that defendant Etta P. Russell and her vendees have been in possession of the property since May 23, 1916, which will be seven years on the 23rd day of next May, (the answer was filed Feb. 26, 1923) holding the same under color of title. It was insisted in the answer that the said L. L. Thomas, the vendee of complainants Kenyon, was in possession of the property at the present time, under a warranty deed from complainants. It was further averred that complainants were estopped from denying the title and claiming a breach of warranty by these defendants. It was denied that complainants had any right of action against them for breach of warranty or for anything else.

Later an amended and supplemental bill was filed; alleging that since the filing of the original bill and the answer of defendants, to-wit: on the 21st day of May, 1923, one Henry M. Winslow had filed his original ejectment bill in the chancery court of Morgan county, Tennessee alleging that he was the owner of five-eighths undivided interest in Morgan county Entry No. 3567, one hundred acres of which entry is embraced in the deed from defendants Russell to complainants, and on which, as alleged in the bill, all of the valuable improvements are situated, and which it was averred constituted the most valuable part of said boundary of land, being, it was said, worth more than all the other put together; that said bill was filed against complainants as well as their vendee, L. L. Thomas and the said Etta Russell and husband, J. G. Russell. It was sought by said bill to eject the defendants thereto from five-eighths undivided interest in such entry 3567, and then to have same sold for partition. A certified copy of the proceedings were filed as Exhibit A to the amended and supplemental bill.

It was alleged that the filing of said ejectment bill amounted to an additional breach of warranty of the deed to complainants by the defendants Russell, and that complainants were entitled to have these proceedings stayed until the termination of the said Morgan county suit, styled Henry M. Winslow v. Clifton Hunt, et al., No. 1970, for the reason that on the termination of that clause will depend the question of the validity of the title as deeded to complainants by Russell, and that this suit could not be correctly determined until that suit is settled and the title adjudged. They prayed that further proceedings in this cause be stayed until said suit was determined in Morgan county, and that after the termination of that suit by final decree complainants be given such relief as they may be entitled to on the hearing of this cause, taking into consideration such final decree as may have been entered in said cause of Winslow v. Clinton Hunt et al., along with the prayer of the original bill in this cause, and for general relief.

Answer was filed also to this by original defendants, in which it was admitted that the bill had been filed against them as alleged, but it was averred that they believed it was instigated by the solicitor for J. D. Kenyon, one of the complainants in the bill, and that the institution of such suit was for the purpose of hindering and delaying the collection of the debt owing to these defendants by the said Kenyon. They denied that the complainants in said bill had any rights whatever in and to the tract of land for which they have sued, and averred that J. W. Stone, one of the solicitors in this case, has signed the cost bond, according to his own copy filed with this bill, for H. M. Winslow, the complainant in that bill; that these defendants have made answer to the bill of Henry M. Winslow in the chancery court of Morgan county, denying his right or title to the said property, and showing that if he ever did have a title the same is now barred by laches and the statute of limitations. It was denied that complainants have any right to hold up the litigation in this cause until the decision of said suit in Morgan county, and allege that the questions raised in such suit are not decisive of the questions in this action.

Proof was taken and the cause heard before the Chancellor, who dissolved the injunction and dismissed the bill, taxing the complainants and their security with the costs. Complainants excepted, prayed, obtained and have perfected an appeal to this court, and have assigned errors as follows:

"1. The court erred in dismissing the complainant's bill and refusing to grant the relief therein prayed for."

"II. The Chancellor erred in holding and finding as a fact that Etta P. Russell was in actual, notorious, adverse possession of the property at the time she sold it to Kenyons,

and that they held it until they sold it to Thomas and delivered the possession to him and that he has held it ever since adversely to all claimants."

"III. The court erred in holding and finding as a fact that Martin H. Snow had a deed to the 100 acres of entry 903 .and that it had been lost or mislaid.

"IV. The court erred in holding and finding as a fact that the possession of the property was held by Martin Snow, on Grant No. 40337 adversely from 1877, and on Entry No. 903 from March 1901, and all of Entry No. 3700 from 1889 to that extent of the boundaries of that entry."

"V. The court erred in holding and finding as a fact that the possession of Martin Snow amounted to an ouster of the tenants in common, as to Grant No. 40337."

"VI. The Chancellor erred in holding that the possession of the land since the bringing of this suit could be used to perfect a title to the land so as to defeat the recovery of the complainants."

"VII. The Chancellor should have held that the possession of Martin H. Snow on Grant No. 40337 after the decree in the Key case was the possession on one of the tenants in common and was not and could not be adverse to the other tenants in common and that at the time he sold the land to Russell that he owned only a three-eighths undivided interest in this part of the land, and could pass title to only that portion of the land, and that as to the land inside of entry 903 that he had by his possession only perfected title to so much of the same as was in actual enclosure, and that as to the land lying outside of these two entries that he had no title of any kind, nor any color of title or possession, and that from the date of the deed to Russells to the bringing of this suit there had not elapsed enough time to perfect title and that therefore the title to more than half of the land had failed and that the said Russells had breached their warranty and should have permanently enjoined the sale of the collateral notes and have ordered a reduction in the price to Kenyons in proportion to the value of the land to which title had failed bore to the value of the entire tract and have credited the notes of Kenyon to that extent and if the amount of reduction exceeded the amount still owing by Kenyon should have given him judgment for the excess against the Russells on their warranty, and it was error on the part of the Chancellor not to so hold."

"VIII. The Chancellor erred in not holding that the Russells had breached their warranty in failing to pay the taxes

for the year 1918 and in failing to render judgment against them for that amount with interest."

Upon request of complainants the Chancellor made and filed as part of the record a written finding of fact, as follows:

"That Martin H. Snow and his wife Texas Snow, made a deed on the 23rd day of May 1916 to Etta P. Russell for the following described tract of land lying in the 3rd civil district of Morgan county, Tennessee:

"Beginning at an ash in a branch in the South boundary line of Morgan county Entry No. 3567, Grant No. 40337 to Martin Snow for 200 acres, thence to a chestnut oak the southeast corner of same, then South 89 East 17.5 poles to a black gum, thence South 80 East 80 poles to a stake, thence South 10 West 60 poles to a stake, in the line of Betty Snow, thence with her line South 80 East 50 poles to a stake, thence North 10 East 130 poles to a pine at the foot of a ridge, thence North 80 West 24 poles to a poplar, then North.10 East 37 poles to a stake, thence North 80 West 45 poles to a stake and pointers, John Kittrell's corner, thence with Kittrell's line North 45 West 95 poles to a stone in the branch, being Bob Leffews corner, thence up said branch as it meanders about 208 poles to the beginning, containing 237½ acres of land. But excluding therefrom the mineral in and under Entry No. 903, Grant No. 20879 to A. S. Lenoir for 100 acres.

"That said deed was duly recorded in the register's office of Morgan county, Tennessee on the 26th day of May 1916, in Deed Book B. Vol. 3, pages 566-567, and that on the 22nd day of Nov. 1918, Etta P. Russell and her husband J. G. Russell, made a deed conveying the same tract of land to J. D. Kenyon and J. H. Kenyon jointly, and retained a vendors lien in the deed to secure the payment of five notes for the sum of three hundred and sixty dollars ($360) cash, due one, two, three, four and five years after date.

"J. D. Kenyon made a deed to J. H. Kenyon, deeding to him his interest in the said property. That J. H. Kenyon executed a deed to L. L. Thomas on the 26th day of November 1921. That Thomas paid to J. H. Kenyon five hundred dollars ($500) and executed his notes for three thousand dollars ($3,000). That at the time this deed was made J. H. Kenyon had executed his notes to J. G. Russell aggregating the sum of thirteen hundred and fifty-five and 56/100 dollars ($1355.56), and had placed in the hands of D. O. Harris, as collateral security the notes executed by Thomas and also a trust deed to secure the same upon the lands conveyed. That these notes given by Kenyon to Etta P. Russell were given to take up the

original notes which were secured by a vendor's lien and the vendor's lien was released by Etta P. Russell, that the said notes became due and the collateral was advertised for sale by D. O. Harris, attorney for Etta P. Russell before the bringing of the suit.

"Etta P. Russell was in actual, notorious and adverse possession of the property, holding under her deed from Martin Snow up to the time she made the sale to J. H. Kenyon and J. D. Kenyon. That the said J. H. and J. D. Kenyon held the actual, adverse, notorious and exclusive possession of the property from the time of the delivery possession to them by Etta P. Russell up to the time of the sale by J. H. Kenyon to L. L. Thomas. That J. H. Kenyon delivered his possession of the property to L. L. Thomas and he has been in actual, open, adverse and notorious possession of the property from that time up to the present date holding the same under the deed executed to him by J. H. Kenyon.

"The tract of land described in the deed from M. H. Snow and wife to J. G. Russell was embraced in Morgan county Entry No. 261, and Grant No. 17800. That a portion of this land had been granted to M. H. Snow by Grant No. 40337 on the 12th day of March, 1873. That the other portion of the said land was embraced in Entry No. 903, Grant No. 20879 and granted by the State of Tennessee to A. S. Lenoir, and purported to be one hundred acres but that by actual survey of the two tracts together they covered one hundred thirty-seven and one-half acres. That Martin Snow bought the land described as Entry No. 903, Grant No. 20879 on the 16th day of March 1901 at a Clerk and Master's sale under the order om the chancery court of Roane county in a case styled Mary L. Byrd v. P. S. Mason et al, for the sum of one hundred twenty-five dollars ($125) and executed his two notes due six and twelve months after date and that he paid off said notes and that a Clerk and Master's deed issued to him in the year 1901. That the said deed has been lost and cannot be produced. That the said tract of land also lay within Entry No. 3700 for one thousand acres of land entered by M. H. Snow January 1, 1889 and recorded in the entry taker's book of Morgan county on the same date by Thomas Roberts, entry taker, and that Martin Snow was in the actual, open, exclusive and notorious possession of the entire property from January 1, 1889 and was claiming all of the land embraced therein to the extent of the boundary of said Entry No. 3700.

"That he went in possession of Entry No. 903 Grant No. 40337 before March 1901 and that he has held possession open,

exclusive and notorious claiming it as his own ever since. That he went in possession of Entry No. 3567, Grant No. 40337 in 1877 and that he has been in exclusive, adverse possession of the same by himself and vendees up to the present time but that his possession was interrupted by a decree of the chancery court on the 10th day of November 1891 entered in the case of Lizzie M. Key and others v. A. H. Snow et al., in the Supreme Court at Knoxville, Tennessee, but that since the date of said decree he has held possession of said property claiming it as his own and that the possession has been con- tinuous and uninterrupted ever since that time. That he has taken from the land the products and profits of the same and has openly claimed the same as his own land ever since that time.

"Martin Snow's possession of the 200-acre grant known as entry 3567 Grant No. 40337 amounted to an ouster of any tenants in common and that by reason of his possession that he was vested with an absolute title superior to that of any other tenants in common. That also his holding of Entry No. 903 under a deed and also a decree for more than twenty years prior to the filing of the suit, vested him with an absolute title to that portion of the tract, there being a pre- sumption that a grant was issued to him.

"J. D. Kenyon parted with his title to this property by a conveyance to J. H. Kenyon and that J. H. Kenyon has parted with all his title to the property by a deed to L. L. Thomas. That L. L. Thomas is in the open, actual possession of the property at the present time claiming the same under the deed from J. H. Kenyon, and that there has been no eviction of the vendee of Etta P. Russell or J. H. Kenyon, and that at the present time, J. H. Kenyon has shown no damages and is unable to restore the possession of his grantor, Etta P. Rus- sell. That the deed made by M. H. Snow to J. G. Russell has existed for more than seven years and by possession has rip- ened into a perfect title so that at the present time there could be no eviction of the occupant by any other person claim- ing title."

We agree with the Chancellor, that in the condition of this case there is no covenant running with the land under which any re- lief could be afforded to complainants, even had it been proven that title had failed, but under the circumstances we think some relief should have been given under the covenant of seizin, right to convey and against incumbrances in the Russell deed, it being proven that at the time it was executed the taxes for 1918 were due and had not been paid, which were a lien upon the land.

Such covenants were personal and,. being broken as soon as the deed was executed, and complainants having paid and discharged these taxes, they were entitled to have same credited upon the notes in advance of any subjection of the collateral which secured them. It is not sufficient to say that defendants were willing and ready to make this credit and stood ready to do so. The taxes had not been paid when the suit was brought, and the covenants in the deed assured their discharge. What may have been agreed upon later about them is not material.

It was insisted that the sum of the taxes paid, being less than fifty dollars, is beneath the dignity of the Court, but we think under the circumstances of this case the Court had jurisdiction, by reason of the exclusive character of the relief sought. The allegation is that defendants Russell were nonresidents, and that the notes were the only property they owned in Tennessee. In other words that they are insolvent, so far as any other property in Tennessee is concerned, and that if allowed to sell said collateral notes and remove their property beyond the limits of the State of Tennessee complainants would be utterly helpless in so far as being able to get relief for the breach of warranty was concerned, and that they were entitled to come into Court and have said notes now in the hands of D. O. Harris attached, and to have the sale of the collateral notes as advertised stayed by injunction. If the purpose of the bill had been only to collect the amount of the taxes paid under such breach this Court would be without jurisdiction, as the amount would be less than fifty dollars, but the purpose of the bill was to collect damages in amount largely in excess of the sum of the taxes, which was only one of the results of the alleged breach of warranty; and even with respect to this incident of the minor sum, (which turns out to be the only relief shown to which complainants are entitled), we think, under the circumstances of this case, with a threatened injury and an inadequate relief at law apparent, that the jurisdiction is independently supported.

"The fact that there is no sufficient remedy at law for an attempted injury, is a strong reason why there should be a remedy in equity." Ridgway v. The Bank of Tennessee, 11 Hum., 532.

"The restriction and limitations of jurisdiction of chancery to sums exceeding $50, applies only when the jurisdiction turns wholly upon the amount involved. If the jurisdiction to grant the relief sought is exclusively conferred upon the chancery court, the limitation as to amount does not apply." note 4 to section 6090 Shannon's Code, citing State v. Covington, 4 Lea, 58; Malone v. Dean, 9 Lea, 341.

The results would be the same if the jurisdiction exclusively existed independently of the statute.

It can not be insisted that a law court has any jurisdiction whatever to enjoin the collection of collateral notes until the proper credit has been entered upon the notes they secure, which seems to be the only adequate relief open to complainants in the circumstances of this cause. This jurisdiction was exercised previous to the passage of the law embodied in section 6088 of Shannon's Code, which by express terms continued it. The jurisdiction does not turn wholly upon the amount involved, and is not therefore controlled by section 6090 of said code.

We do not think, aside from the items of taxes, that any other failure of title, if it had been shown, would have entitled the complainants to a recovery at this time. Their interest in the land had been transferred to Thomas, who is now apparently uncomplaining and in the actual possession of the land. For the breach of such covenants therefore as are not personal, and as run with the land, he alone is entitled to sue. Certainly complainants are not entitled to maintain an action until they have been required to answer upon their warranty.

The last vendee (Thomas) has the right to pass by the complainants and sue the Russells for any eviction that he may suffer, or upon any voluntary surrender and plenary proof of a superior title to which he might yield, and Russells certainly are not liable to complainants for any damages along this line until complainants have been called upon and have actually responded to their detriment. Thomas is not before the court so that under its elastic jurisdiction it might protect complainants by compelling him to act in the premises, or to act for him under any subrogation considerations, and, therefore, whatever may be the state of the title, any relief complainants may be entitled to must be founded in the breach of warranty or warranties that do not run with the land, and which may have effected any real injury to the complainants themselves.

The covenants in the Russell deed are as follows:

"The grantor hereby covenants with the said grantees that she is lawfully seized and possessed of said land, and that she has a good and lawful right to convey the same, and that the said land is clear, free and unimcumbered, except for the vendors' lien herein set out, and that she will forever warrant and defend the title to the same against the lawful claims of all persons whomsoever; subject, however, to the aforesaid vendor's lien."

We think the principles stated in the case of Morrow v. Baird, 114 Tenn. (6 Cates), 552, and the authorities there referred to settle this cause. It is there held:

"An intermediate vendor who has been forced to discharge his liability to his vendee, evicted by a paramount title, may maintain an action for reimbursement against his vendor whose deed to him also contains a general warranty of title."

But complainants in this cause have not been forced to discharge any liability to their vendee, Thomas, further than the taxes, and may never have to do so. This is essential to the right to sue:

"It may therefore be considered as settled, in accordance with principle and authority, that where one has parted with all his interest in land, he parts also with all right to control over the covenants which run with it, and he can only regain that right over them by being liable upon his own covenants and satisfying that liability." Rawle on Covenants for Title, sec. 215, citing Allen v. Little, 36 Me., 170; Van Court v. Moore, 26 Mo., 98.

These authorities were referred to approvingly in the case of Morrow v. Baird, supra, as well as other cases to the same effect, the court holding that complainant in that case had discharged his liability to his vendee. While holding also that an actual eviction is not necessary in the case of one who sues, and that in lieu thereof the one in whom the right of action exists may voluntarily surrender and take upon himself the peril of proving an evicting title, they did not hold, as would be necessary to support complainants' contention in this case, that an intermediate vendor could exercise this option for one not complaining, or recover a judgment in his own right, though it would be no bar to the assertion against the same vendor of a similar claim of complainants' vendee. This is just the reason given why an intermediate vendor can not sue without satisfying the claim asserted against himself.

"The reason of the rule seems to be to prevent the obvious injustice which would arise from making prior vendees liable to all subsequent owners in turn, and thus pay damages more than once for the same breach of covenant. The principle that the intermediate covenantee can never sue until he has satisfied the damages was adopted to prevent such an injustice." Morrow v. Baird, 114 Tenn., 560.

In this view of the case, while the Chancellor found that the title was good and there had been no breach of warranty on this ground tantamount to an eviction, we deem it unnecessary and perhaps inadvisable to determine that question at this time, further than as the same may be involved upon the tax question and relief to be had thereon upon the covenants that are personal and do not run with the land. Generally stated, though there may

be exceptions, they are, so far as necessary to be referred to, covenants of seizin, of right to convey, and against incumbrances. Under the title of covenants in C. J. Vol. 15, pages 1245-6-7, it is said that the general rule in the United States is, that if they are broken at all, they are broken the instant they are made, and, consequently, unless otherwise controlled by statute, they do not run with the land.

Such are therefore available as the foundation for action for all who have suffered damages in consequence of their breach, without regard to the question of the present state of the possession. It is a sufficient eviction for purposes of suit, if that consideration be necessary, that one has been compelled to satisfy an incumbrance that was the obligation of the personal covenantors as in this case.

Complainants are entitled to be reimbursed and, in the circumstances of this case, are entitled to have the collection of the collateral notes enjoined at least until the notes of complainants are credited with the amount of the taxes, $43.31 with interest since the 30th day of December, 1921. In other respects their bill will be dismissed without prejudice, so that hereafter, should it turn out that complainants are compelled to respond by reason of any failure of title, they may not be precluded on the warranties that run with the land. To this extent assignments one and eight are sustained. The other assignments are overruled as immaterial. The decree of the Chancellor will be reversed. Defendants will be enjoined from the sale of the collateral notes until complainants notes have been credited with the taxes paid, with interest as aforesaid, this proposition being included in the larger essay to totally enjoint their collection. In other respects the bill is dismissed without prejudice. The costs in the court below will be divided, and, where sureties are liable in consequence of principals, they will be included in the judgments. Costs of this court will be paid by defendants.

Portrum and Thompson, JJ., concur.